**Manuel C. MARTINEZ, Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Appellee.**

No. 04–96–00878–CV.

Court of Appeals of Texas, San Antonio.

Aug. 13, 1997.

Arthur G. Vega, Juan Rocha, Jr., Law Offices of Arthur G. Vega, San Antonio, for Appellant.

Cathleen C. Herasimchuk, Rusty Hardin & Associates, Pamela Fulbright-Scheyer, Southern Pacific Transportation Company, Harding J. Rome, Houston, for Appellee.

Before HARDBERGER, C.J., and ANGELINI and SHIRLEY W. BUTTS (Retired)[1], JJ.

SHIRLEY W. BUTTS, Justice (Retired).

The trial court granted summary judgment in favor of the defendant, Southern Pacific Transportation Company (Southern Pacific). Plaintiff, Manuel C. Martinez, sued Southern Pacific for an alleged violation of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*. (1986). Plaintiff appeals from the adverse judgment.

Plaintiff advances two points of error: 1) the trial court erred in dismissing his cause of action; and 2) the court erred in granting summary judgment. We affirm.

### Background

The summary judgment evidence shows that plaintiff was an employee of Southern Pacific for 18 years. At the time of this

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

incident in 1991, he held the position of chief clerk/cashier in Eagle Pass. He claimed that after Eloy Flores became trainmaster in 1987, plaintiff's stress level increased because the trainmaster gave conflicting orders on tasks to be performed and changed the manner of processing records. Plaintiff's work load and hours increased. He alleged that these changes and reduction in the work force caused him stress so that he felt "overworked and over-loaded."

Plaintiff sued under the FELA, alleging that his injury was stress-induced and manifested through the physical symptoms of a heart attack. He did not claim that his work was dangerous work. Rather, he based the claim on work environment which caused extreme stress, which contributed to his hyperlipidemia, hypertension and heart attack, all of which were physical manifestations of the work-related stress. In addition, he claimed that Southern Pacific failed to provide a safe place to work.

On Saturday, May 4, 1991, plaintiff suffered a heart attack at home. He had worked all that week, including the day before, without an incident. His deposition, in summary judgment evidence, confirmed that he recalled nothing out of the ordinary happening to him during that time.

In his Fifth Amended Original Petition, plaintiff explained what he meant by his allegation of failure to provide a safe place to work: "such as, generally, the failure to provide safe and adequate office equipment, i.e., office equipment in a condition which would not imperil the safety of employees under their supervision." Plaintiff alleged that Southern Pacific's failure to promulgate safety rules was demonstrated by the employer's failure to provide office equipment which would not imperil the safety of the employees, to proscribe carelessness of supervisors toward the employees, to proscribe indifference to duty by all employees and officers, to provide written safety rules to clerical workers, to provide adequate inventory and assessment of office equipment, and to be assured that the office equipment used by the plaintiff was in a serviceable condition.

## Standard of Review

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Tex.R. Civ. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the movant will be taken as true. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (noting that movant must establish entitlement to summary judgment on issues expressly presented to trial court by conclusively proving all essential elements of cause of action or defense as matter of law).

To succeed on summary judgment as a defendant, Southern Pacific must disprove as a matter of law one or more of the essential elements of the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). A summary judgment for the defendant which disposes of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theory pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983) (per curiam).

> Section 1 of the FELA provides in part: Every common carrier by railroad while engaging in [interstate commerce] ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. 45 U.S.C § 51.

\* \* \* \* \* \*

Southern Pacific filed its motion for summary judgment, alleging that the plaintiff contended his heart attack resulted from job related stress caused by the defendant's failure to provide a safe place to work and to provide sufficient personnel to assist him in the performance of his job, and he had to

work longer hours. Further, Southern Pacific emphasized that the plaintiff did not claim he was injured by a physical impact or injury on the job caused by the employer's negligence.

Southern Pacific claimed its entitlement to summary judgment as a matter of law because the plaintiff failed to state a claim under the FELA, asserting there is no duty to provide a railroad worker with a stress free work environment. Thus, Southern Pacific averred that it had disproved as a matter of law an essential element of plaintiff's cause of action—*duty*. The trial court granted the motion for summary judgment, which had been supplemented twice, dismissing the plaintiff's cause with prejudice and ordering that the plaintiff take nothing from the defendant.

■ Plaintiff cites *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662–63 (Tex.1990), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990), which sets out what a plaintiff must prove, by a preponderance of the evidence, to recover under the FELA:

1. That at the time of the Plaintiff's injury, Plaintiff was an employee of the Defendant performing duties in the course of his employment.

2. That the Defendant was at such time a common carrier by railroad, engaged in interstate commerce.

3. That the Defendant was 'negligent' as claimed by the Plaintiff; and

4. That such negligence was a 'legal cause' of damage sustained by the Plaintiff.

*Mitchell*, 786 S.W.2d at 662–63.[2] The court declared that in Texas, the existence of a duty is a question of law. *Id.* at 662. A plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability. *Abalos v. Oil Dev. Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976). *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995) (stating that threshold inquiry in negligence case is

whether defendant owes legal duty to plaintiff).

## The *Gottshall* Opinion

Southern Pacific relies on *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). The railroad employee Gottshall, while working on a railroad track in the hot sun, witnessed his longtime co-worker/friend collapse and die. Thereafter, the body was covered but remained within a few feet of the workers for several hours. Gottshall suffered severe emotional and physical injuries after that and sued the railroad company.

In *Gottshall*, the court held that railroad workers' claims for negligent infliction of emotional distress are cognizable under the FELA and adopted the "zone of danger" test as the appropriate rule for determining the railroad's liability for such claims. *Id.* at 554, 114 S.Ct. at 2409–10. The common law zone of danger test limits the proper scope of an employer's duty to avoid subjecting its employees to negligently inflicted emotional injury. *Id.* The zone of danger test is consistent, said the court, with FELA's central focus on physical peril. *Id.* at 555, 114 S.Ct. at 2410. Under this test, a worker within the zone of danger of physical impact will be able to recover for negligently inflicted emotional distress. Railroad workers can therefore recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact. *Id.* at 556, 114 S.Ct. at 2410–11. The Supreme Court remanded *Gottshall* for the appeals court to apply the correct standard, the zone of danger test.

## The *Carlisle* Opinion

Also relied on by Southern Pacific is the companion case to *Gottshall*, *Consolidated Rail Corp. v. Carlisle*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Carlisle worked as a train dispatcher for Conrail in 1976. His job was to ensure safe and timely movement of passengers and cargo. But aging railstock and outdated equipment,

---

2. The railroad worker, Mitchell, was injured while attempting to board an M–K–T locomotive and he slipped from the step where iced had

formed. The issue was whether the Texas law on 'foreseeability' applied.

along with reduced work force, made the job difficult. It became necessary for Carlisle to work longer hours and assume heavier duties. He and his fellow dispatchers complained about safety concerns, the high level of stress, and poor working conditions. He was promoted to trainmaster at the Philadelphia yards in 1988 with added responsibilities and much longer work hours. Soon he experienced insomnia, headaches, depression, and weight loss. Carlisle sued Conrail under FELA for negligent infliction of emotional distress.

The court noted it has liberally construed FELA to further the intended remedial goal. *Id.* at 543, 114 S.Ct. at 2404. It stated, however, that does not mean that FELA is a workers' compensation statute. *Id.* The court held that the Third Circuit Court of Appeals erred in upholding Carlisle's claim under the FELA for negligent infliction of emotional distress arising from work-related stress. The court determined there is no support in the common law for this unprecedented holding, which would impose a duty to avoid creating a stressful work environment, and thereby dramatically expand employers' FELA liability to cover the stresses and strains of everyday employment. "Indeed, the Third Circuit's ruling would tend to make railroads the insurers of the emotional well-being and mental health of their employees," noting again that FELA is not an insurance statute. *Id.* at 554, 114 S.Ct. at 2409.

The Supreme Court remanded *Carlisle* with instructions to find for the railroad, holding that his work-stress-related claim clearly does not fall within the common law's conception of the zone of danger. "Without any support in the common law for such a claim, we will not take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment." It was held, "in short, the core of Carlisle's complaint was that he 'had been given too much—not too dangerous—work to do. That is not our idea of an FELA claim.'" *Id.* at 558, 114 S.Ct. at 2412.

### The *Capriotti* Opinion

*Capriotti v. Consolidated Rail Corp.*, 878 F.Supp. 429 (N.D.N.Y., 1995), also cited by Southern Pacific, displays similar circumstances as in the instant case. Capriotti was a yardmaster who had suffered two earlier heart attacks. Conrail cut back its staff, giving plaintiff more work, responsibilities, and longer hours. He went on sick leave and sued Conrail, alleging it was negligent in requiring him to work longer hours and under stressful conditions, and in transferring him to Buffalo. He alleged the stressful work conditions exacerbated his heart condition, and further that he suffered from stress related angina pectoris.

Citing *Gottshall* and *Carlisle, supra,* 512 U.S. at 543, 114 S.Ct. at 2404, the court wrote that the proof needed in an FELA case is merely whether the employer's negligence played any part, even the slightest, in producing the injury. Nevertheless, FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of the liability is the employer's negligence, not the fact that the injury occurs. In this respect, the elements of duty, breach, causation, and damages are still applicable. *Capriotti,* 878 F.Supp. at 430–31.

The court then compared Capriotti's injury with Carlisle's and noted that the Supreme Court characterized the injury of Carlisle as mental or emotional harm that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms. The Supreme Court, in looking to the common law of negligent infliction of emotional distress, held that the right of recovery for such an injury is limited to plaintiffs who are within the "zone of danger." That test limits recovery to those who sustain a physical impact as a result of defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. *Gottshall,* 512 U.S. at 547–48, 114 S.Ct. at 2406–07.

The *Capriotti* court, referring to *Carlisle,* stated that the Supreme Court found there was no event or occurrence that caused Carlisle to sustain physical impact or placed Carlisle in immediate risk of physical harm. "The core of Carlisle's complaint was that he has been given too much—not too dangerous

work—to do." *See Capriotti,* 878 F.Supp. at 432 (*quoting Carlisle,* 512 U.S. at 558, 114 S.Ct. at 2412).

Plaintiff Capriotti conceded that his negligent infliction of emotional distress claim was no longer viable after *Carlisle.* He nevertheless claimed that his was a pure negligence case where his physical injury was caused directly by the defendant's conduct. This kind of claim is proper under FELA when it is shown that employer's negligence caused the injury. Rejecting the argument, the court stated that Capriotti had not identified any particular condition existing at Conrail that was dangerous and caused his injury. Instead, Capriotti argued that the cumulative effect of his duties and responsibilities and the long hours of work created a stressful environment which caused his injury. The court then stated that the core of the complaint was identical to Carlisle's: he had been given too much—not too dangerous—work to do. *Id.* at 433.

■ In the present case, the plaintiff's summary judgment evidence, primarily deposition testimony, shows that a co-worker agreed with him that the work load was heavy, requiring long hours, and that more assistance was required to do the job. A computer expert testified that the plaintiff's work would be lessened dramatically if he had his own personal computer and adequate software system. He suggested that the daily work load would be reduced about 30 per cent with this equipment.

The plaintiff testified that Southern Pacific failed to provide him with a personal computer, which would reduce the stress at work. In answer to interrogatories, he stated that Southern Pacific's negligent acts causing the heart attack were "generally the stress placed on me at work," citing increased work, reduced personnel, conflicting orders, changes in work processes and record keeping, switching and demurrage freight records changes which did not conform to ICC regulations, and increased work hours.

Dr. A.J. Alamia, a Professor of Psychology at the University of Texas–Pan American, testified that the overload of work increased plaintiff's stress which caused a physiological reaction leading to the heart attack.

Dr. William Bailey, a cardiologist, was asked to state his opinion whether plaintiff's work environment was a contributing factor to his high levels of stress, and whether the stress resulting was a contributing factor in the development of his hyperlipidemia, hypertension, and the resulting heart attack. The doctor stated his opinion based on the data presented to him, that the work environment and the relative level of stress, or perceived stress, would be a contributing factor.

The core of plaintiff's claim is that his work was too dangerous because he was given too much of it. Plaintiff contends that he suffered a physical injury—the heart attack—because his duties as chief clerk/cashier at Eagle Pass should have been handled by more employees and he should have been provided his own personal computer to reduce daily work hours. It is argued that the cumulative effect of plaintiff's duties and responsibilities and long work hours created a stressful environment which caused plaintiff's injury.

■ On appeal, plaintiff describes his claim as one of pure negligence. Regardless of the label of pure negligence, this is a claim for negligent infliction of emotional distress. *Carlisle,* 512 U.S. at 546, 114 S.Ct. at 2405–06. As such, the right of recovery for such an injury is limited to plaintiffs who are in the "zone of danger." That test limits recovery to those who sustain a physical impact as a result of defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. *Gottshall,* 512 U.S. at 547–48, 114 S.Ct. at 2406–07.

■ Regarding plaintiff's general and global allegations of the failure of Southern Pacific to promulgate safety rules to protect all employees, there is no summary judgment proof that as a result of the alleged negligent conduct there existed a "zone of danger" and that plaintiff suffered a physical impact or threat of imminent physical impact therein.

Regarding the claim that his injury resulted from Southern Pacific's negligence in creating an unsafe work place, plaintiff did not identify any particular negligent condition

existing at Southern Pacific which caused his physical injury.

Further, plaintiff's summary judgment evidence showed no event or occurrence that caused him to sustain physical impact or be placed in immediate risk of physical harm. Nor does he identify any particular condition existing at Southern Pacific that was dangerous.

We hold that plaintiff's claim that Southern Pacific is liable for failure to provide him with a personal computer and stress-free work environment does not state an actionable claim because FELA does not impress that duty on the employer. There is no support in the common law for imposing a duty on the employer to avoid creating a stressful work environment, thereby expanding the employer's FELA liability to cover the stresses and strains of everyday employment. This is a claim of insufficient assistance on the job, revolving around plaintiff's contention that his work was too dangerous because he was given too much to do, with no personnel or updated computer assistance. The work-stress-related claim does not fall within the common law's conception of the zone of danger. Therefore, the trial court did not err in granting summary judgment based on Southern Pacific's negation of an element of the cause of action—duty. Point of error two is overruled.

### Judgment of Dismissal

■ In point of error one, plaintiff contends the trial court erred in dismissing his cause of action. The summary judgment in this case provides:

On this 27 day of June, 1996, the court heard Defendant [Southern Pacific's] Motion for Summary Judgment, and having considered the motion has determined it should be granted.

It is therefore ORDERED that the above-styled and numbered cause be dismissed with prejudice as to [Southern Pacific] and that the Plaintiff take nothing from the Defendant. . . .

\* \* \* \* \* \*

Thus, the trial court granted summary judgment *and* dismissed with prejudice. In

*Heibel v. Bermann,* 407 S.W.2d 945, 947 (Tex.Civ.App.—Houston 1966, no writ), the judgment rendered on summary judgment recited that the trial court dismissed the cause. The appellate court agreed that the plaintiffs were precluded under the workers' compensation law from recovery against the defendant. The court wrote:

The defenses established as a matter of law were ones in bar of recovery, and the case was disposed of on motion for summary judgment and not exception. The judgment should have been one that plaintiffs take nothing. The judgment will, therefore, be reformed so as to provide that plaintiffs take nothing.

*Id.* at 947.

The court in *Rosenthal v. Groves,* 387 S.W.2d 920, 923 (Tex.Civ.App.—Houston 1965, no writ) recognized that the trial court had dismissed the suit with prejudice. "Proper procedure here would have been to enter a take-nothing judgment either after a motion for summary judgment by appellee or a trial on the merits." The court noted, however, that a dismissal with prejudice operates as a bar to further proceedings and affirmed. *Id.* at 947.

In the present case, the trial court granted the summary judgment, impliedly ruling that Southern Pacific established as a matter of law that it owed no duty to plaintiff in his FELA cause of action. The case was disposed of on the motion for summary judgment. Therefore, the proper judgment is that plaintiff take nothing. We agree that the court should not have ordered the dismissal. The judgment will, therefore, be modified to delete the order of dismissal with prejudice.

As modified, the judgment of the trial court is affirmed.